UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 04-249-DLB

TINA M. PARRELLI-BALL                                                                                  PLAINTIFF

vs.                                        **OPINION & ORDER**

JOHN W. SNOW, Secretary
DEPARTMENT OF TREASURY                                                                       DEFENDANT

*******************

Plaintiff, a former IRS employee, commenced this action against Defendant, alleging unlawful discrimination based upon age, disability, and sex, as well as retaliation for filing several EEOC charges.[1]

This matter is presently before the Court upon Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. #30). In lieu of filing a response, Plaintiff filed a motion pursuant to Federal Rule of Civil Procedure 56(f), requesting that the Court stay its decision on Defendant's motion and permit the parties to conduct discovery (Doc. #39).[2] Defendant filed a memorandum in opposition (Doc. #42).

On August 24, 2006, the Court heard oral argument on the pending motions. Plaintiff was represented by Mark Byrne; and Defendant was represented by Assistant United States Attorney John Osborn, respectively. The proceedings were recorded by

---

[1] The Court notes that on July 10, 2006, Henry M. Paulson was sworn in as the new Secretary of the Treasury.

[2] This was after the Court granted three motions for extension of time to file a response (one was an agreed motion) (Docs. #32, 35, 38).

1

Official Court Reporter Lisa Wiesman.  Having heard the arguments of counsel, and being otherwise sufficiently advised, the Court finds Defendant's arguments well-taken.  His motion to dismiss or, in the alternative, for summary judgment will, therefore, be **granted.**

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At the outset, the Court notes (and both parties agree) that this is anything but a typical employment discrimination case.  Plaintiff Tina Parrelli-Ball began working for the Internal Revenue Service (IRS), a bureau of the Treasury Department, in 1975.  In 1979, she became a special agent in the Criminal Investigation (CI) Division at the Cincinnati Service Center (CSC).  In 1986, she was suspected to be the target of a "hit" by a drug dealer in Detroit, Michigan, and placed in protective custody in the agency's Louisville District for three weeks.[3]  (AR 230).  During that time, Plaintiff developed severe anxiety - a condition that eventually became disabling.

On April 27, 1987, Plaintiff was promoted to Chief of CI at CSC.  (*Id.*).  Later that year, while she was attending a conference, Plaintiff claims that a colleague told her how to forge travel vouchers, which was allegedly common practice among upper management employees.  (*Id.*).  According to Plaintiff, she voluntarily exposed the scheme in August 1987, the perpetrators were ultimately demoted and re-assigned, and her role in their downfall "became common knowledge nationally."  (AR 231).

In October 1987, Plaintiff requested a "hardship transfer" and voluntary downgrade to a special agent position in Lexington, Kentucky, where her fiancé lived and worked. (*Id.*). In August 1988, Plaintiff attended a computer class at the Federal Law Enforcement

---

[3]The "hit" turned out to be on another female agent.

Training Center (FLETC). Plaintiff alleges that the instructor failed her - the only female agent in the class - because of "who she was," and because she refused his advances. (*Id.*).

Plaintiff then filed three separate complaints with the Equal Employment Opportunity Commission (EEOC). She filed the first complaint in August 1988, alleging discrimination based upon her sex (complaint #88-1172). (*Id.*). In support, Plaintiff cited the failing grade she received at FLETC training course.[4] Plaintiff filed a second complaint in March 1989, alleging retaliation (complaint # 89-1036). (*Id.*). In support, she claimed that she "received obvious reprimands immediately upon filing [the prior complaint]," including being taken off a high-profile case, investigated by the agency's Inspection Division for impersonating an FBI agent, and denied a performance award for which she was nominated. (AR 231-32). Plaintiff claims that, as a result, her work environment became intolerable, and her anxiety became debilitating.

Plaintiff filed a third complaint in May 1989, alleging discrimination based upon handicap/disability, i.e., her anxiety (complaint #89-1117). (AR 232). According to Defendant, Plaintiff was offered reasonable accommodations. Specifically, Robert Thomas, Chief of CI for the Louisville District, offered Plaintiff voluntary reassignment to another available position (Tax Fraud Investigative Aide), as well as a liberal leave policy, both of which Plaintiff declined. (Def's Exhibits 4-6). On July 11, 1989, Plaintiff was terminated based upon her failure to meet the physical requirements of her position.

---

[4]According to Plaintiff, she later received a certificate indicating that she had, in fact, successfully completed the course. (AR 233). She claims that she never would have filed the EEOC charge if she knew she had passed.

3

Plaintiff subsequently applied for disability retirement and workers' compensation benefits. Her applications were approved, and she elected to receive workers' compensation (FECA) benefits on December 9, 1989, based upon the potential for vocational rehabilitation and re-employment opportunities. The following year, on July 27, 1990, Plaintiff settled her EEOC complaints for a lump sum of $11,000. (Def's Exhibit 11). Paragraph 3 of the settlement agreement stated, in pertinent part:

> The Complainant [Plaintiff] agrees not to ever seek employment with the Internal Revenue Service. Nothing herein shall be construed to constitute a waiver of the Complainant's right and obligations under the Federal Employees Compensation Act. The Complainant waives her right to priority consideration for any position with the Internal Revenue Service ....
>
> The Complainant acknowledges that she fully understands the terms and conditions of this agreement ....

(AR 298-300).

Over the next several years, the IRS Workers Compensation Center (WCC) sent correspondence to the Department of Labor's Office of Workers' Compensation Programs (DOL OWCP) to determine Plaintiff's continuing entitlement to benefits and her ability to return to work.[5] Plaintiff alleges that this correspondence was not forwarded to her. In October 2000, Plaintiff's treating psychiatrist, Dr. Douglas Ruth, completed a report indicating that she suffered from anxiety with phobic reaction, and could return to work with severe restrictions. (Def's Exhibit 24). Specifically, Dr. Ruth opined that Plaintiff could work 8 hours per day, but could not return to her job as special agent because she was unable to make arrests, serve warrants, interview potentially violent people, or engage in conflicts

---

[5]The first letter was sent on March 27, 1997. Six other inquiries (including requests for medical documentation) were made. According to Plaintiff, she only learned of their existence when she made a FOIA request.

with use of a firearm.  (*Id*.).  On June 22, 2001, OWCP sought a second opinion.  Dr. Charles Shelton performed an independent medical exam (IME) on July 19th, and opined that Plaintiff could not return to work due the nature of her psychiatric conditions.  (Def's Exhibit 32).

In mid-2001, Plaintiff became the target of a federal criminal investigation led by the Treasury Inspector General for Tax Administration (TIGTA).  She was suspected of making false statements on a 2001 worker's compensation form (Form CA-1032).[6]  On February 28, 2002, a search warrant was executed on Plaintiff's home, and on March 1, 2004, the United States filed a one-count Criminal Information charging her with violating 18 U.S.C. § 1920 (case number 5:04-cr-30-JMH).  In particular, the government alleged that Plaintiff knowingly and willfully stated that she was not employed from April 6, 2000 through July 6, 2001, and that said statement was false.  That same day, Plaintiff pleaded guilty to the Information.  On August 31, 2004, she was sentenced to three years probation with four months of home detention, and ordered to pay $47,879.46 in restitution, a $10,000 fine, and a special assessment fee of $25.  More importantly, Plaintiff's FECA benefits were terminated, effective March 1, 2004.

In the interim, Plaintiff filed a request to re-open/reinstate her previously-settled EEOC complaints.  In a letter dated October 17, 2002 and addressed to the Director of the Office of Equal Opportunity Program, Plaintiff claimed that: 1) the IRS breached an unsigned agreement by failing to expunge any documents related to the FLETC training course from her personnel file, 2) paragraph 3 of the settlement agreement constituted

---

[6]This form is sent annually to claimants receiving continuing workers' compensation benefits.

another form of reprisal for exercising her EEOC rights, and 3) the DOL OWCP failed to direct the correspondence from the IRS to her, in violation of the settlement agreement and FECA and its implementing regulations. According to Plaintiff, she "was intentionally not made aware of these employment opportunities in retaliation for asserting [her] rights under the EEOC ...," and "discriminated against due to ... [her] qualified disability, Anxiety with Phobic Reaction." (Def's Exhibit 1).

On August 5, 2003, the Treasury issued a final agency decision (FAD), finding that: 1) any claim related to the unsigned agreement to expunge Plaintiff's records was resolved by virtue of the July 27, 1990 settlement agreement, 2) Plaintiff entered into the settlement agreement willingly and of her own accord, and 3) Plaintiff's claim, which was commenced more than 12 years after her prior claims were settled, was untimely. (Def's Exhibit 38).

Plaintiff filed a formal EEO complaint on November 26th, alleging discrimination based upon age and disability, and retaliation. In support, she claimed that: 1) OWCP failed to respond to inquiries by WCC, resulting in the IRS not re-hiring her, and 2) TIGTA discriminated against her by initiating a criminal investigation. The Treasury dismissed her complaint on February 10, 2004, finding that: 1) Plaintiff's allegations amounted to an impermissible collateral attack on the on the workers' compensation process and, therefore, did not state an EEO claim, 2) the TIGTA investigation did not amount to discrimination, and 3) even though Plaintiff became aware of the discrimination in fall 2002, she did not seek EEO counseling until October 15, 2003, well outside the 45-day time limit. (Def's Exhibit 40).

Plaintiff appealed the August 5, 2003 and February 10, 2004 decisions to the EEOC. The decisions were consolidated for purposes of appeal. On April 21, 2004, the EEOC

6

affirmed both decisions, finding that: 1) the IRS did not breach paragraph 3 of the settlement agreement by not re-hiring her, 2) Plaintiff failed to present any evidence that she was coerced into signing the settlement agreement, or did not understand its terms, 3) there was no valid "expungement" agreement, 4) Plaintiff's complaint regarding the manner in which the IRS managed her FECA benefits was a collateral attack on the workers' compensation process, and finally, 5) the TIGTA investigation could not form the basis of an actionable EEO claim. After her request for reconsideration was denied on August 26, 2004, Plaintiff filed the instant suit on November 29, 2004.

In his motion to dismiss or, in the alternative, for summary judgment, Defendant advances several arguments, both threshold and substantive. First, Defendant argues that Plaintiff's federal complaint impermissibly exceeds the scope of her EEOC complaint because it includes a claim of sex-based discrimination. Second, Defendant argues that any claim relating to the DOL OWCP's failure to respond to inquiries by the IRS WCC must be dismissed because it fails to name the proper party defendant (i.e., the DOL OWCP). Moreover, Defendant reiterates the Treasury's February 10, 2004 findings. *See supra* p.6. With respect to her claim regarding paragraph 3 of the July 27, 1990 settlement agreement, Defendant argues that Plaintiff failed to seek counseling in a timely manner, and that the substance of the agreement was not discriminatory or retaliatory. In fact, Defendant claims that Plaintiff benefitted financially from the settlement.

Defendant also submits that Plaintiff's claims of unlawful (age, sex, and disability) discrimination and retaliation must fail because: 1) she has not suffered an adverse employment action, 2) she has not established that she was a qualified individual with a disability, or a member of a protected group (over age 40) when she signed the settlement

agreement, and 3) she cannot establish a causal connection between her protected EEO activity and any adverse employment action (assuming there was an adverse employment action).

Plaintiff filed a Rule 56(f) motion to continue, arguing: 1) the parties have not conducted any discovery (they have not yet had their Rule 16 meeting), 2) the exhibits attached to Defendant's motion have not been authenticated and have been redacted, and 3) discovery is needed on several issues, such as whether the IRS complied with 20 C.F.R. § 10.507 and made a suitable offer of work, when the 45-day time limit to seek EEO counseling began to run, whether Plaintiff's allegations of sex-based discrimination reasonably arise out of the allegations in her EEOC complaint, and whether Plaintiff was "qualified" for other IRS positions.  In her affidavit, Plaintiff states that additional time is needed to determine whether she lacked the capacity to enter into the 1990 settlement agreement and appreciate the time limits for initiating contact with an EEO counselor.  She also claims that discovery is needed so she can flesh out her claims of sex and disability discrimination.

In response, Defendant claims that the exhibits attached to his motion are merely portions of the administrative record.  With respect to the merits of Plaintiff's motion, Defendant argues that "allowing [her] to conduct discovery would not affect the outcome of the case inasmuch as she unquestionably has no case ...."  (Doc. #42, p.8).  In fact, during oral argument, defense counsel argued that if ever there was a case that warranted early dismissal, it is this one.  As demonstrated by the following analysis, the Court agrees.

## II.  ANALYSIS

A.  **Summary Judgment Standard[7]**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

B.  **Discussion**

In her complaint, Plaintiff's purports to raise two claims under the same count. First, she argues that the IRS discriminated and retaliated against her by failing to re-hire her, in violation of FECA, the Department of Labor's regulations, and the 1990 settlement agreement (Doc. #22, ¶25). Second, she argues that the terms of the 1990 settlement agreement were discriminatory and retaliatory; specifically, paragraph 3, which prohibits

---

[7]Because matters outside the pleadings have been presented to, and considered by, the Court, Defendant's motion will be construed as a motion for summary judgment. *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991).

her from seeking future employment with the IRS and waives her right to priority consideration for any position (Doc. #22, ¶26).

Because Plaintiff's allegations regarding the terms of the 1990 settlement agreement can be disposed of easily, the Court address those claims first. Contrary to Plaintiff's suggestion, there is no evidence that the terms of the agreement constitute acts of discrimination or retaliation. *See EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1238 (6th Cir. 1980) (holding that conciliation agreements resulting in consent decrees may not be considered independent acts of discrimination, as a matter of law, unless there are allegations of bad faith in making the agreement, that is, allegations that the agreement was not a bona fide attempt to conciliate a claim but rather an attempt to bestow unequal employment benefits under the guise of remedying discrimination). Rather, as pointed out by Defendant, the evidence establishes that Plaintiff: 1) was represented by counsel; 2) acknowledged that she understood, and accepted the terms of, the agreement; and 3) received financial benefits (i.e., $11,000) from the settlement. Alternatively, even if the settlement agreement was discriminatory or retaliatory, the Court concludes that, having approved it and reaped the benefits therefrom, Plaintiff is now estopped from challenging it. For these reasons, Defendant's Motion for Summary Judgment is **granted** with respect to the allegations raised in paragraph 26 of Plaintiff's complaint.

The Court now turns to what the parties consider the dispositive issue, that is, whether Defendant unlawfully discriminated and retaliated against Plaintiff by failing to re-employ. Plaintiff alleges that Defendant had a duty to reinstate her under FECA and its implementing regulations, as well as the 1990 settlement agreement. More particularly, Plaintiff relies on 20 C.F.R. § 10.507, which states in pertinent part:

> Where the attending physician or OWCP notifies the employer in writing that the employee is partially disabled (that is, the employee can perform some work but not return to the position held at date of injury), the employer should act as follows:
>
> (a) If the employee can perform in a specific alternative position available in the agency, and the employer has advised the employee in writing of the specific duties and physical requirements, the employer shall notify the employee in writing immediately of the date of availability.
>
> (b) If the employee can perform restricted or limited duties, the employer should determine whether such duties are available or whether an existing job can be modified. If so, the employer shall advise the employee in writing of the duties, their physical requirements and availability.
>
> (c) The employer must make any job offer in writing. However, the employer may make a job offer verbally as long as it provides the job offer to the employee in writing within two business days of the verbal job offer.

20 C.F.R. § 10.507.

As noted above, Defendant contends that Plaintiff's claims of discrimination must fail for a myriad of reasons, at least one of which the Court finds persuasive. The Court agrees with Defendant that Plaintiff's claims of discrimination are precluded because she failed to exhaust her administrative remedies by initiating contact with an EEOC counselor within forty-five (45) days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1).[8] In this case, Plaintiff alleges that she was discriminated against since 1995; though she did not become aware of the discrimination until the fall of 2002 when she received the documents she requested through the Freedom of Information Act (FOIA). It is undisputed that Plaintiff then waited approximately one year, until October 15, 2003, to seek counseling. (Doc. #30, Exh. 33). This is well outside the 45-day time limit.

---

[8]The Court also notes that Plaintiff's claim of sex-based discrimination is subject to dismissal because it was not raised in her November 26, 2003 EEOC complaint. *See EEOC v. Bailey Co.*, 563 F.2d 439 (6th Cir. 1977), *cert. denied*, 435 U.S. 915 (1978).

In her Rule 56(f) motion, Plaintiff contends that there may be genuine issues of material fact regarding: 1) when she knew or should have known that the discriminatory act occurred, and 2) whether the doctrine of equitable tolling applies. The Court finds these arguments unconvincing for two reasons. First, in her October 17, 2002 letter, Plaintiff states she has been discriminated against since 1995. Second, any suggestion that Plaintiff was not aware of, or could not appreciate, the strictures of the EEOC's pre-complaint process is disingenuous in light of the fact that she had filed three prior charges of discrimination. For these reasons, the Court concludes that Plaintiff's present employment discrimination claims are time-barred.

The Court also concludes that, even accepting Plaintiff's allegations as true, they in no way amount to unlawful discrimination. Plaintiff's allegations can be summarized as follows: first, she claims that Defendant failed to reinstate her, in violation of its duty under 20 C.F.R. §10.507; second, she claims that "[Defendant] sent six letters to the Department of Labor, Office of Workers Compensation Program[s] offering to accommodate [her] injury and the [DOL] agent failed to direct the letters to her or respond to any of the same." (Doc. #1, p.4).

The OWCP's regulations require an employer to: 1) reinstate a fully recovered employee that applies for reinstatement, and 2) seek a suitable position for a partially recovered employee upon notice from the OWCP or an attending physician. *See White v. U.S. Postal Service*, 168 Fed.Appx. 409, 413 (Fed. Cir. 2006); 20 C.F.R. §§ 10.505, 10.507 (2005). In this case, the medical evidence establishes that Plaintiff is not fully recovered. Similarly, the OWCP has not notified Defendant that Plaintiff is partially recovered, therefore, Defendant is not required to seek a suitable position for Plaintiff.

More fundamentally, however, the Court finds that any alleged failings on the part of the Department of Labor's Office of Workers Compensation Programs in responding to Defendant's inquiries cannot form the basis of a discrimination claim against Defendant. The record in this case reveals that Defendant has made a good faith effort to re-employ Plaintiff, sending numerous letters to the OWCP in that vein. (Doc. #30, Exh. 15-21, 23). Like the Commission, the Court concludes that under these circumstances Plaintiff's claims of employment discrimination against Defendant are without merit. Defendant's Motion for Summary Judgment is, therefore, **granted** with respect to the allegations raised in paragraph 25 of Plaintiff's complaint.

Finally, because Plaintiff is unable to show that postponement of a ruling on Defendant's motion for summary judgment will enable her to rebut the motion, Plaintiff's Rule 56(f) motion is **denied**. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998).

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. #33) be, and hereby is, **GRANTED**;

(2) Plaintiff's Rule 56(f) Motion to Continue the Summary Judgment Hearing and Conduct Discovery (Doc. #39) be, and hereby is, **DENIED**;

(3) Plaintiff's claims against Defendant be, and hereby are, **DISMISSED WITH PREJUDICE** and this matter is stricken from the active docket of this Court; and

(4)   A Judgment in favor of Defendant will be entered concurrently herewith.

This 31st day of August, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-04-249-MSJOpinion.wpd

14